UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JARRHOD S. WILLIAMS,

     Petitioner,                              Case No. 14-cv-12341
                                             Hon. Matthew F. Leitman

v.

DEWAYNE BURTON,

     Respondent.

_____/

## OPINION AND ORDER (1) DENYING MOTION FOR EVIDENTIARY HEARING (ECF #7), (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (3) DISMISSING ACTION WITH PREJUDICE, AND (4) GRANTING IN PART A CERTIFICATE OF APPEALABILITY

This is a case about choices, hindsight, and regret. In 2007, Petitioner Jarrhod S. Williams ("Petitioner") confessed to participating in two murders. He was subsequently charged with two counts of first-degree murder and possessing a firearm in connection with the commission of a felony (the "felony firearm charge"). His first trial ended in a mistrial. The prosecution then offered Petitioner a favorable plea deal: he could plead no contest to the felony firearm charge and to a newly-added count of second-degree murder, and the prosecution would dismiss the first-degree murder charges. Under this deal, he would be sentenced to twelve to thirty years on the second-degree murder count plus two years for the felony firearm charge. Petitioner accepted the deal and entered no

contest pleas to the felony firearm charge and the second-degree murder charge. But he later chose to withdraw those pleas and to proceed to a second trial on the original charges, including first-degree murder. A jury convicted Petitioner on all counts at the second trial, and the state trial court sentenced him to two mandatory terms of life in prison. In hindsight, Petitioner's decision to withdraw his pleas was a bad one, and he deeply regrets it.

Petitioner now seeks a writ of habeas corpus from this Court on several grounds. First, Petitioner claims that his trial counsel was constitutionally ineffective. More specifically, Petitioner asserts that his trial counsel incorrectly advised him (Petitioner) that at the second trial the prosecution could not deviate from the theory it presented at the first trial. Petitioner insists that he withdrew his no contest pleas based upon this erroneous advice. Petitioner also claims that his appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim on direct appeal to the Michigan Court of Appeals.

But the evidence in the record does not support Petitioner's claim that he withdrew his pleas based on bad advice from his trial counsel about the scope of the prosecution's case at the second trial. During his direct appeal, Petitioner insisted that he withdrew his pleas because his trial counsel (1) provided him erroneous advice about how long he would spend in jail if he went forward with the pleas, and (2) convinced him he could win an acquittal at a second trial by

2

attacking the police investigation and the veracity of his purported confession. Petitioner did *not* tell the state appellate court that he withdrew his pleas because his trial counsel provided him erroneous advice about the limits on the prosecution's theory at a second trial. Thus, the record belies Petitioner's current assertion that he withdrew his pleas based on his trial counsel's advice that the scope of the prosecution's case would be limited at the second trial. He is not entitled to habeas relief on that basis.

Second, Petitioner claims that he was denied the effective assistance of counsel because his trial counsel had irreconcilable conflicts of interest. Petitioner contends that his trial counsel attempted to protect the interests of the victims' families instead of protecting Petitioner's interests exclusively. Petitioner also insists that his trial attorney's advice to withdraw his pleas was motivated by the attorney's own personal desire to embarrass the Detroit Police Department. Petitioner further asserts his appellate counsel was ineffective for failing to raise these conflicts of interest on direct appeal.

The record does not support these conflict-of-interest claims. Petitioner's claim that his trial attorney attempted to protect the victims' families rests primarily on one isolated, hyperbolic statement by counsel, and Petitioner takes that statement out of its proper context. Moreover, there is no reason to believe that Petitioner's trial counsel had a personal interest in attacking the police

department that was separate and apart from counsel's interest in protecting Petitioner's interests.

Finally, Petitioner claims that he was denied due process of law during his state-court collateral attack on his conviction. He argues that the state trial judge erroneously ruled that he (the trial judge) was procedurally barred from reviewing Petitioner's claim that he withdrew his pleas based on his trial counsel's bad advice about the scope of the prosecution's case at the second trial. Petitioner insists this error violated his right to due process. But after the state trial court invoked the procedural bar, it *did proceed* to review the merits of Petitioner's ineffective assistance claim based on his trial counsel's advice. Furthermore, Petitioner has not cited any authority for the proposition that a state court violates a petitioner's due process rights when it erroneously invokes a procedural bar on collateral review.

Accordingly, for all of the reasons stated herein, the Court **DENIES** the Petition for Writ of Habeas Corpus (the "Petition") (ECF #1). For the reasons further explained below, the Court **DENIES** Petitioner's motion for an evidentiary hearing (the "Evidentiary Hearing Motion"), and the Court **DISMISSES** this action **WITH PREJUDICE**. The Court will, however, **GRANT** a **LIMITED CERTIFICATE OF APPEALABILITY** on the sole issue of whether it should have granted Petitioner an evidentiary hearing on his claims.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Petitioner Is Charged With Murder and Unsuccessfully Moves to Suppress His Confession**

In 2007, D'Anglo Savage ("Savage") and Tommy Haney ("Haney") were shot to death in Detroit.  Shortly after their deaths, the Detroit Police arrested Petitioner.  During questioning following his arrest, Petitioner confessed that he shot multiple rounds from an AK-47 assault weapon into Savage's car in order to avenge the deaths of his cousins.

On July 10, 2007, Petitioner was arraigned before Wayne County Circuit Court Judge David Allen on two counts of first-degree premeditated murder and on the felony firearm charge.  Before trial, Petitioner moved to suppress his confession, and Judge Allen denied the motion.  Petitioner thereafter waived his right to a jury trial and proceeded to a bench trial before Judge Allen.

**B.    Expert Testimony at Petitioner's First Trial Undermines the Prosecution's Theory of the Case, and Judge Allen Eventually Declares a Mistrial**

Petitioner's bench trial began on March 26, 2007.  The prosecution's theory was that Petitioner acted alone and used one gun to shoot and kill both Savage and Haney.  The prosecution based this theory on certain forensic testing completed by the Detroit Police Department.

However, during trial, experts from the Michigan State Police testified that shell casings recovered from the crime scene actually showed the presence of two

5

guns, not one.  This expert testimony raised serious questions about the accuracy of the forensic testing underlying the prosecution's theory of the case.  Judge Allen eventually declared a mistrial, and the prosecution was prepared to re-try Petitioner.[1]

## C.   Petitioner Agrees to a Favorable Plea Deal and Enters Two No Contest Pleas to Reduced Charges, But He Later Chooses to Withdraw His Pleas

Before Petitioner's re-trial, the prosecution made him a favorable plea offer. Prosecutors offered to permit Petitioner to plead no contest to the felony firearm charge and no contest to a newly-added charge of second-degree murder.  In exchange, the prosecution agreed to dismiss the first-degree murder charges. Under this plea deal, Petitioner would be sentenced to twelve-to-thirty years on the second-degree murder charge and two years on the felony firearm charge. (*See* Settlement Offer and Notice of Acceptance, ECF #5-8 at 1, Pg, ID 294.)  Petitioner accepted this plea offer and entered his two no contest pleas before Judge Allen on March 27, 2008. (*See id.*)

Prior to sentencing, Petitioner moved to withdraw his no contest pleas.  The record does not contain a written motion explaining the basis of Petitioner's motion to withdraw his pleas, and it appears that the state trial court did not hold an on-the-record hearing on the motion.  The court granted the motion by order dated

---

[1] The record before the Court does not include a transcript of the bench trial before Judge Allen or an explanation as to why a mistrial was declared in that trial.

October 9, 2008. (*See* Docket Sheet, ECF #5-1 at 5, Pg. ID 131.)  On October 24, 2008, Judge Allen recused himself, and the case was reassigned to Judge Timothy Kenny.

## D.   Petitioner's Counsel Makes a Perfunctory and Unsupported Request to Limit the Prosecution's Theory of the Case at Petitioner's Second Trial

Prior to Petitioner's second trial, his attorney filed several motions in limine. Judge Kenny heard argument on Petitioner's motions on March 3 and 5, 2009. After Judge Kenny denied the motions on the record, and after the parties resolved multiple scheduling issues related to the forthcoming trial, Petitioner's counsel briefly raised one last issue.  Counsel noted that at Petitioner's first trial, the prosecution had taken the position that Petitioner was the only shooter (the "Prosecution's One-Shooter Theory").  Counsel then argued that the prosecution should not be permitted to deviate from the Prosecution's One-Shooter Theory at the second trial and should not able to argue that Petitioner was guilty under the theory that he aided and abetted a second shooter.  Petitioner's counsel candidly acknowledged that this argument was a "stretch" and that he only brought it up because of something the prosecutor had said "during this [h]earing." (March 5, 2008, Hr'g Tr. at 66-70, ECF # 5-13 at 66-70, Pg. ID 479-83.)  Judge Kenny rejected counsel's argument, and counsel said he was "too busy" to file a brief in support of his argument:

COUNSEL:   [] [D]uring this [h]earing, the prosecutor said something that concerns me, and now I believe it gives me a basis for a Bill of Particulars.  I want to file it as well as a possible motion to dismiss. . . .

It seems to me that this particular prosecutor here is literally going to change the theory that the initial prosecuting attorney, . . . stated that [Petitioner] had a gun.  [That Petitioner] by himself shot that car up and shot and killed these two people by himself, which meant that their theory was that he was the principle offender, not acting in concert and not aiding and abetting.

If the People of the State of Michigan, who will never tell me what their position is, if they intend to argue now that [Petitioner is not] the principle offender, but is an aider and abettor or now is acting in concert, I think a collateral estoppel issue arises.

*JUDGE KENNY:  How in the world do you come up with that?*

*COUNSEL:  My goodness, Judge, it was a stretch.*

JUDGE KENNY:  It was a real big stretch there . . . [G]o ahead.

COUNSEL:  My opinion is this.  If the People of the State of Michigan, if at a trial the People of the State of Michigan have a right to proceed on either an aiding or abetting theory, acting in concert, or as principle offender, and the Indictment does not have to specify.

However, once jeopardy attaches, and the People of the State of Michigan relying on a false report by the People of the State of Michigan, stand in front of a trier of fact and assert that in fact this is a single principle offender, that is an admission that we rely on.

Therefore, when I bring out the truth and demonstrate

that it's two persons, there's a two-person theory, they pay no penalty. I'm simply saying they cannot now argue that my client was acquitted of aiding and abetting when the prosecutor got up there and said my client was the only one with a gun and the only one that shot those people. He was constructively acquitted of aiding and abetting.

*JUDGE KENNY: Never heard of the concept.*

*COUNSEL: It's a new concept, Judge, I'm making it up. I'm telling you this is a case of first impression is what we call it.*

That's all it is. I researched this all the way back to [19]94. I have never seen this argument made. Doesn't mean it's not valid. I'm simply saying now they going to proceed on aiding and abetting, I think they waive that.

[ . . . . ] *I know it's a stretch from first to third. It's a novel issue. I won't bother to brief it because I'm busy. I do a stretch now, Judge, but I'm supposed to stretch. But if you don't want to hear the stretch.*

*JUDGE KENNY: Not only is it a stretch from first to third, I don't think you are in the same ball park with me . . . .*

(*Id.*; emphasis added.)

## E.    Petitioner is Convicted of First-Degree Murder at His Re-trial

Petitioner's jury trial began on March 30, 2009. On April 8, 2009, the jury returned a verdict of guilty on all counts. Judge Kenny later sentenced Petitioner to life in prison without the possibility of parole on the first-degree murder counts and two years on the felony firearm charge.

**F.      Petitioner Appeals and Explains Why He Withdrew His Pleas**

Following his convictions, Petitioner, through appointed counsel, filed an appeal of right with the Michigan Court of Appeals.  Petitioner's appellate counsel filed a brief on appeal.  In addition, Petitioner filed his own *pro se* brief in support of his appeal.  In that brief, Petitioner argued that he received ineffective assistance of counsel because his trial counsel gave him bad advice that led him to withdraw his no contest pleas.

Petitioner told the Michigan Court of Appeals that he withdrew his pleas based upon two pieces of misinformation provided by his trial counsel.  First, Petitioner explained that his trial counsel gave him erroneous advice about the amount of time he would have to spend in jail if he went forward with his pleas. (*See* ECF #5-25 at 89, Pg. ID 1424.)  Petitioner, who was twenty-one years old at the time he entered his pleas, said that his trial counsel told him if he did not withdraw his pleas, he may not be released from jail until his 72nd birthday. (*See id.* at 90-91, Pg. ID 1425-26.)  Petitioner insisted that this advice was wrong because, in fact, he could have been released in only twelve years had he not withdrawn his pleas. (*See id.*)  He told the state appellate court that "[h]ad he been truthfully advised of the amount of time he would possibly serve, or the law governing the sentence, he would have certainly accepted the [] plea deal." (*Id.*)  Second, Petitioner maintained that he withdrew his pleas because his attorney

10

convinced him he could win acquittal by attacking the investigation of the Detroit Police Department. (*See id.*)  Petitioner said that his trial counsel "assured [him] that he would be released when the evidence proved that his statement/confession [to the Detroit Police Department] was in fact false." (*Id.*)

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *See People v. Williams*, 2010 WL 4026077 (Mich. Ct. App. Oct. 14, 2010.)  The appellate court rejected the ineffective assistance claim in Petitioner's *pro se* brief.  Notably, the appellate court accepted Petitioner's explanation – from his *pro se* brief – concerning why he chose to withdraw his no contest pleas.  In the section of its Opinion rejecting Petitioner's claim of ineffective assistance of counsel, the appellate court found that Petitioner "decided to withdraw his plea and proceed to trial based on a strategy of attacking the Detroit Police Department's investigation." *Id.* at *6.

Petitioner filed an application for leave to appeal with the Michigan Supreme Court, and that court denied leave to appeal on March 29, 2011. *See People v. Williams*, 795 N.W.2d 24 (Mich. 2011).

## G.   Petitioner Files a Motion for Relief From Judgment in State Court in Which He Offers a New Explanation Concerning Why He Withdrew His Pleas

After his direct appeals were exhausted, Petitioner returned to state court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500 (the

"6.500 Motion"). (*See* ECF #5-23.)  In the 6.500 Motion, Petitioner again argued that he withdrew his pleas based on bad advice from his trial counsel.  But the alleged erroneous advice he highlighted in the 6.500 Motion was *not* the same advice that Petitioner previously identified as having induced him to withdraw his pleas.

In the 6.500 Motion, Petitioner explained that his "trial counsel advised [him] to withdraw his plea based upon objectively unreasonable and erroneous conclusions of law as to double jeopardy, estoppel[], [and] aiding and abetting [among other errors]." (*Id.* at 28-29, Pg. ID 1295-96.)  More specifically, Petitioner said that he withdrew his pleas because his trial counsel assured him that the prosecution would be constrained to the Prosecution's One-Shooter Theory and could not argue to the jury that he was guilty under an aiding-and-abetting theory. (*See id*. at 26-29, 34 Pg. ID 1293-96, 1301.)  Petitioner also argued in the 6.500 Motion that his trial counsel was "motivated by personal interests adverse" to him (Petitioner) and that he suffered prejudice from this alleged conflict of interest. (*See id.* at 18, Pg. ID 1285.)  Finally, Petitioner claimed that his appellate counsel was ineffective for failing to raise certain arguments on appeal (including that his trial counsel provided the erroneous advice with respect to the Prosecution's One-Shooter Theory). (*See id.* at 35-41, Pg. ID 1302-08.)

Judge Kenny denied the 6.500 Motion by written order dated July 24, 2013. (*See* ECF #5-24 at 1-8, Pg. ID 1328-35.)  Judge Kenny first noted that Petitioner's "claim of ineffective assistance of counsel was raised previously on appeal. Specifically, the Michigan Court of Appeals addressed the issue of the plea in detail and stated that [Petitioner] decided to withdraw his plea and proceed to trial based on a strategy of attacking the Detroit Police Department's investigation." (*Id.* at 6, Pg. ID 1333.)  Judge Kenny explained that he was prohibited from "grant[ing] relief to [Petitioner because] the motion alleges grounds for relief[] which were decided against the [Petitioner] in a prior appeal or proceeding."[2] (*Id.*)

Nonetheless, Judge Kenny then proceeded to consider the merits of Petitioner's ineffective assistance claim related to his trial counsel's advice concerning the Prosecution's One-Shooter Theory.  Judge Kenny concluded that there was "no evidence that . . . leads this court to believe that [Petitioner] was mislead [sic] or improperly advised [that the prosecution would be limited to that theory].  As such, [Petitioner's ineffective assistance] claim is without merit." (*Id.*)  Likewise, Judge Kenny held that Petitioner's claim of ineffective assistance of

---

[2] At the hearing before this Court, counsel for Respondent conceded that Judge Kenny erred when he concluded that the state appellate court had already ruled on Petitioner's claim that he withdrew his pleas based upon bad advice related to the Prosecution's One-Shooter Theory.  The state appellate court did not address that claim because Petitioner did not present it to that court.  However, for the reasons explained in this Opinion, notwithstanding any error by Judge Kenny concerning the scope of the state appellate court decision, Petitioner is not entitled to habeas relief.

appellate counsel related to the Prosecution's One-Shooter Theory was "without merit." (*Id.* at 7, Pg. ID 1334.)

Judge Kenny did not address Petitioner's argument that his trial counsel labored under conflicts of interest or that Petitioner's appellate counsel erred by failing to raise these alleged conflicts on direct appeal.

Petitioner filed applications for leave to appeal Judge Kenny's ruling to both the Michigan Court of Appeals (*see* ECF #5-27 at 3-50, Pg. ID 1620-67) and the Michigan Supreme Court (*see* ECF #5-28 at 2-60, Pg. ID 1669-1727). Those appellate courts denied Petitioner's applications. (*See* ECF #5-27 at 1, Pg. ID 1618; ECF #5-28 at 1, Pg. ID 1668.)

## H.   Petitioner Files a Petition for a Writ of Habeas Corpus in This Court and Later Requests an Evidentiary Hearing

On June 14, 2014, Petitioner filed the Petition in this Court. (*See* ECF #1.) Petitioner later filed the Evidentiary Hearing Motion. (*See* ECF #7.)   In the Petition, Petitioner makes three claims:

1. Petitioner was denied due process of law when Judge Kenny denied the 6.500 Motion.  Petitioner claims that Judge Kenny erroneously ruled that he (Judge Kenny) was procedurally barred from considering Petitioner's ineffective assistance claim related to the Prosecution's One-Shooter Theory.  Petitioner insists that Judge's Kenny refusal to review that claim violated his right to due process.

2. Petitioner was denied the effective assistance of trial counsel in two respects.

First, his trial counsel advised him to withdraw his pleas based on the erroneous legal advice that the prosecution would be limited to the Prosecution's One-Shooter Theory at Petitioner's re-trial. Second, his trial counsel suffered from conflicts of interest that prejudiced Petitioner.

3. Petitioner was denied the effective assistance of appellate counsel when appellate counsel failed to raise the ineffective assistance of trial counsel claims described in Petitioner's second claim listed above.

Neither the Petition nor the Evidentiary Hearing Motion is supported by an affidavit or an offer of proof.

The State responded to both the Petition and the Evidentiary Hearing Motion, and requested that the Court deny both. (*See* ECF ## 4, 9.) The Court held a hearing on the Petition and the Evidentiary Hearing Motion on March 30, 2016.

## ANALYSIS

### A.    Petitioner's Request for an Evidentiary Hearing

#### 1.    Governing Legal Standard

A federal district court is generally prohibited from granting a habeas petitioner an evidentiary hearing if the petitioner failed to develop the factual basis for his claims in state court. The governing statute, 28 U.S.C. § 2254(e)(2), provides:

> If [a habeas petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the [petitioner] shows that –

15

> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense.

*Id.* A habeas petitioner "fail[s] to develop the factual basis for his claims" within the meaning of this statute where he fails to exercise reasonable diligence in seeking to establish the factual predicate for the claims. *Williams v. Taylor*, 529 U.S. 420, 432-37 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1937 (2007). When considering whether to exercise that discretion, a district court should consider whether the factual allegations that a

petitioner seeks to prove, if true, would entitle the petitioner to federal habeas relief. *See id.* at 1940 ("[B]ecause the deferential standards prescribed by [Section] 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.")

When Section 2254(e)(2) poses no bar, "[g]enerally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). But where a petitioner "never specifie[s] what could be discovered through an evidentiary hearing" or where his claims are "either barred from review or without merit," a district court need not hold an evidentiary hearing. *Id.* Nor is "an evidentiary hearing . . . required on issues that can be resolved by reference to the state court record." *Schriro*, 127 S. Ct. at 1940 (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (affirming denial of evidentiary hearing for habeas petitioner where petitioner's factual allegations "fl[ew] in the face of logic in light of … [the petitioner's] deliberate acts which are easily discernable from the record.")). Thus, "if the record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

17

evidentiary hearing." *Id.*[3]

### 2.      Petitioner Is Not Entitled to an Evidentiary Hearing

Petitioner maintains that he is entitled to an evidentiary hearing with respect to each of the three claims he raises in the Petition.   Respondent asserts that Section 2254(e)(2) precludes the Court from conducting an evidentiary hearing because Petitioner failed to exercise diligence in developing a factual record for his claims in state court.   In the alternative, Respondent urges this Court to exercise its discretion not to hold such an evidentiary hearing.   The Court need not rule upon Respondent's argument under Section 2254(e)(2) because the Court concludes that even if that statute did not bar an evidentiary hearing, the Court would exercise its discretion not to hold a hearing.[4]

---

[3] *See also Williams v. Lafler*, 494 Fed. App'x 526, 534-35 (6th Cir. 2012) (affirming denial of evidentiary hearing where "the record preclude[d] habeas relief because it reveal[ed] neither ineffective assistance of trial nor appellate counsel, and the extra-record evidence to which [the petitioner] ma[de] reference would not [have] enable[d] him to prove factual allegations which, if true, would [have] entitle[d] him to federal habeas relief." (internal punctuation omitted)); *Getsy v. Mitchell*, 495 F.3d 295, 310-11 (6th Cir. 2007) (holding district court did not abuse its discretion when it denied a habeas petitioner an evidentiary hearing because petitioner's allegations were insufficient to support a claim for habeas relief).

[4] Respondent's argument that Section 2254(e)(2) bars an evidentiary hearing has some real force.   When Petitioner presented to Judge Kenny the claims he now presents to this Court, Petitioner did not include an affidavit setting forth the facts he wished to develop at an evidentiary hearing, nor did he make an offer of proof concerning the facts he wished to prove.   The Michigan Court of Appeals has held that "[t]rial court[s] [are] not obliged to hold an evidentiary hearing [where a]

18

### a.   No Evidentiary Hearing on the Claim Related to the Prosecution's One-Shooter Theory

Petitioner seeks an evidentiary hearing primarily to develop factual support for his claim that he chose to withdraw his pleas because his trial counsel wrongly told him that the prosecution would be limited to the Prosecution's One-Shooter Theory at this re-trial.   But Petitioner previously offered the state courts a clear explanation as to why he withdrew his pleas, and he said *nothing* about bad advice from his trial counsel regarding the Prosecution's One-Shooter Theory.   Instead, he told the state appellate court (in his *pro se* brief) that he withdrew his pleas based upon faulty advice about his sentencing exposure and about his ability to

---

defendant supplie[s] no offer of proof." *People v. Arrington*, 1999 WL 33441318, at *2 (Mich. Ct. App. May 28, 1999). Therefore, a petitioner should "make some showing that a hearing [is] necessary," by, for example, producing evidence or filing "affidavits regarding the testimony of the [proposed] witnesses." *Id.* (citing *People v. Ginther*, 212 N.W.2d 922 (1973)). This Court has held likewise. *See Wilson v. Winn*, No. 12-14597, 2015 WL 5999656, at *8 (E.D. Mich. Oct. 15, 2015) (holding habeas petitioner was not entitled to evidentiary hearing where, among other things, petitioner failed to "present any evidence to the state courts in support of his ineffective assistance of trial or appellate counsel claims," and failed to present of an offer of proof in this Court); *Anthony v. Bauman*, No. 10-13312, 2015 WL 9583382, at *6 (E.D. Mich. Dec. 31, 2015) (same). Thus, there is a reasonable argument that Petitioner did not exercise the required diligence in seeking to develop the record in state court. However, Judge Kenny arguably concluded that Petitioner did make a sufficient showing to warrant an evidentiary hearing on his ineffective assistance of trial and appellate counsel claims. Judge Kenny appeared to say that he would have held such a hearing but for his conclusion that he was procedurally barred from doing so. (*See* ECF #5-24 at 5, Pg. ID 1332) ("As a result, [Petitioner's] claims of ineffective assistance of trial counsel would merit an evidentiary hearing and reconsideration in light of the *Padillia* [sic]."). Given the arguable ambiguity in Judge Kenny's ruling, this Court declines to hold that Section 2254(e)(2) bars an evidentiary hearing.

undermine the credibility of the prosecution's witnesses. (*See* ECF #5-25 at 89-91, Pg. ID 1424-26.)

Petitioner's failure to mention his trial counsel's advice about the Prosecution's One-Shooter Theory in his *pro se* appellate-court brief is especially significant because the error in that advice would have been obvious to Petitioner at the time he filed the brief.  Indeed, he filed that brief *after* he was convicted at a trial during which the prosecution was permitted to deviate from the Prosecution's One-Shooter Theory.  If, as Petitioner now claims, his trial counsel had actually advised Petitioner that he should withdraw his pleas because the prosecution would be stuck with the Prosecution's One-Shooter Theory at his re-trial, Petitioner surely would have pointed that fact out to the state appellate court in his *pro se* brief.

Moreover, Petitioner's current claim that his trial counsel assured him that the prosecution would be limited to the Prosecution's One-Shooter Theory cannot be sensibly reconciled with the statements that Petitioner's counsel made to Judge Kenny immediately before the second trial.  Petitioner's trial counsel told Judge Kenny that his effort to limit the prosecution to the Prosecution's One-Shooter Theory was "a stretch." (ECF # 5-13 at 66-70, Pg. ID 479-83.)  It simply does not make sense to conclude, as Petitioner suggests, that his trial counsel (1) guaranteed him that the prosecution would be limited to the Prosecution's One-Shooter Theory

and then (2) conceded on the record to Judge Kenny that the theory was a stretch and that he was "making [the theory] up." (*Id.*)

Under all of these circumstances, Petitioner's current argument that he withdrew his pleas based upon his trial counsel's bad advice about the Prosecution's One-Shooter Theory is implausible.  For that reason, the Court declines to hold an evidentiary hearing on that theory. *See, e.g.*, *Schriro*, 127 S. Ct. at 1940 (where the "record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

Petitioner is also not entitled to an evidentiary hearing on his claim that his appellate counsel was ineffective for failing to raise Petitioner's argument related to the Prosecution's One-Shooter Theory on direct appeal.  Petitioner has not given the Court any reason to believe that appellate counsel knew (or should have known) that Petitioner's trial counsel allegedly gave Petitioner bad advice about the Prosecution's One-Shooter Theory.  For instance, Petitioner has not submitted an affidavit stating that he told his appellate counsel about that advice.  Nor has Petitioner presented the Court an offer of proof related to this claim identifying what testimony he intends to present at such a hearing.

### b.   No Evidentiary Hearing on the Conflict-of-Interest Claims

The Court also declines to hold an evidentiary hearing on Petitioner's claim that his trial counsel had conflicts of interest.  Petitioner's conflict allegations lack merit and are not worthy of further development.

Petitioner claims that his trial counsel sought to protect the victims' families when counsel should have been exclusively protecting Petitioner's interests.  However, as described below (*see* pp. 30 -31), this argument rests primarily on an isolated, hyperbolic statement by his trial counsel that Petitioner misreads and takes out of its proper context.

Petitioner also claims that trial counsel wanted to attack the police investigation to further counsel's own interests.  But this claim is belied by the fact that counsel scored major "points" *on Petitioner's behalf* at the first trial by attacking that investigation.  And Petitioner has given the Court no reason to believe that counsel had any particular *personal* interest in attacking the police that was separate and apart from advocating on Petitioner's behalf.

Moreover, Petitioner has not made any offer of proof with respect to his conflict allegations.  Nor has he specified any particular facts to be proved at an evidentiary hearing on these allegations.

For all of these reasons, the Court declines to hold an evidentiary hearing on Petitioner's claim that his trial counsel had conflicts of interest.

Nor will the Court hold an evidentiary hearing on Petitioner's claim that appellate counsel should have raised trial counsel's alleged conflicts on direct appeal. There is simply no basis for such a hearing given that (1) there is no reason to conclude that trial counsel actually had conflicts, and (2) Petitioner has not made any offer of proof concerning this claimed error by appellate counsel.

### c.    No Evidentiary Hearing on Due Process Claim

Finally, Petitioner is not entitled to an evidentiary hearing on his claim that Judge Kenny denied him due process of law. Petitioner insists that Judge Kenny violated his due process rights when Judge Kenny concluded that he (Judge Kenny) was procedurally barred from reviewing Petitioner's ineffective assistance claim related to the Prosecution's One-Shooter Theory. But this due process claim does not hinge upon facts that could be developed at an evidentiary hearing. Judge Kenny's written decision is in the record, and there is no need for further fact-finding in order to determine whether that ruling violated Petitioner's due process rights.

Furthermore, Judge Kenny *did* consider the merits of this claim, and he concluded that the claim was "without merit." (ECF #5-24 at 6, Pg. ID 1333.) Thus, Petitioner's claim that Judge Kenny violated his (Petitioner's) right to due process by refusing to consider this ineffective assistance claim is contrary to the record. That further persuades the Court not to hold an evidentiary hearing.

23

**B.     The Merits of Petitioner's Claims**

 **1.     The Ineffective Assistance of Trial Counsel Claim Related to Alleged Bad Advice About the Prosecution's One-Shooter Theory**

  **a.     AEDPA Deference Applies to This Claim**

When a claim brought by a federal habeas petitioner is adjudicated on the merits in state court, 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), supplies the governing standard of review.  And the Sixth Circuit has held that even where a state court first holds that a claim is procedurally barred, if it nonetheless proceeds to address the merits of the claim, it has adjudicated the claim on the merits for AEDPA purposes.  *See Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008) ("[A]n alternative procedural-bar ruling does not alter the applicability of AEDPA."); *Moritz v. Lafler*, 525 Fed. App'x 277, 284 (6th Cir. 2013) ("[T]his circuit's precedents leave no doubt that as long as the state court put forward a merits-based ground for denying post-conviction relief, its mentioning of procedural default as an alternative or even primary ground for denying relief does not preclude AEDPA deference.").  Here, while Judge Kenny held that he was procedurally barred from granting relief on Petitioner's ineffective assistance of trial counsel claim related to the Prosecution's One-Shooter Theory, he (Judge Kenny) nonetheless proceeded to address the merits of the claim.  He concluded that the claim was "without merit." (ECF #5-24 at 6, Pg. ID 1333.)  Thus, AEDPA governs Petitioner's claim related to the advice

24

his trial counsel purportedly provided him with respect to the Prosecution's One-

Shooter Theory.

In relevant part, AEDPA provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>        unreasonable determination of the facts in light of
>        the evidence presented in the State court
>        proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the United States

Supreme Court on a question of law or if the state court decides a case differently

than the Supreme Court has on a set of materially indistinguishable facts. *See*

*Williams*, 529 U.S. at 405-06.    An "unreasonable application" of clearly

established federal law occurs when "a state court decision unreasonably applies

the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A

federal court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly." *Id.* at 410-11.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The United States Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.*

> **b.** **Judge Kenny Did Not Unreasonably Apply Clearly Established Federal Law When He Rejected This Claim**

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) supplies the clearly-established federal law applicable to Petitioner's ineffective assistance claim. In *Strickland*, the Supreme Court set forth a two-part

test to determine whether a criminal defendant petitioner has received the ineffective assistance of counsel. First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Judge Kenny did not unreasonably apply *Strickland* when he declined to grant relief based on Petitioner's claim that he withdrew his pleas because his trial counsel provided him erroneous advice concerning the Prosecution's One-Shooter Theory. Simply put, as explained herein, the evidence in the record refutes the claim. Moreover, Petitioner made no offer to proof concerning that claim to Judge Kenny, and the absence of such an offer of proof further justified Judge Kenny's decision to deny relief on the claim. Simply put, Petitioner's claim that he withdrew his pleas based upon bad advice related to the Prosecution's One-Shooter Theory is not plausible on this record. Thus, Judge Kenny's decision to reject the ineffective assistance claim related to the Prosecution's One-Shooter Theory was not unreasonable. Petitioner is not entitled to habeas relief on this claim.

2.     **The Ineffective Assistance of Appellate Counsel Claim Related to the Prosecution's One-Shooter Theory**

a.     **AEDPA Deference Applies to This Claim**

Judge Kenny addressed the merits of Petitioner's claim that appellate counsel was ineffective for failing to raise on appeal trial counsel's alleged bad advice related to the Prosecution's One-Shooter Theory.  Judge Kenny said:

> [Petitioner] contends his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel as part of [Petitioner's] appeal of right.  *This contention is without merit* because the appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance.  This Court will not second-guess the strategies appellate counsel employed.   The record clearly reflects that the constitutional rights afforded to defendant under the United States and Michigan Constitutions have been protected.   Furthermore, [Petitioner's] argument fails because the defendant cannot show any possible prejudice from appellate counsel's decisions.  *Therefore, [Petitioner] was afforded a fair trial and full appeal. [Petitioner]'s claim is without merit.*

(ECF #5-24 at 6-7, Pg. ID 1333-34; emphasis added.)   Because Judge Kenny adjudicated this claim on the merits, AEDPA deference applies.  *See, e.g.*, *Harrington*, 562 U.S. at 101.

b.     **Judge Kenny Did Not Unreasonably Apply Clearly Established Federal Law When He Rejected This Claim**

As explained above, there is no merit to Petitioner's claim that his trial counsel was ineffective for providing Petitioner bad advice concerning the

28

Prosecution's One-Shooter Theory.  And it is well-established that appellate counsel is not ineffective under *Strickland* for omitting on appeal claims that lack merit. *See, e.g.*, *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[I]f the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("[A]ppellate counsel cannot be ineffective for failure to raise an issue that lacks merit." (quotations and citation omitted)).  Moreover, as further described above, there is no reason to believe (and no evidence in the record) that Petitioner ever advised appellate counsel that his trial counsel provided him bad advice about the Prosecution's One-Shooter Theory, and that further justifies appellate counsel's omission of that issue on appeal.  Under these circumstances, Judge Kenny's decision to deny relief on Petitioner's ineffective assistance of appellate counsel claim was reasonable, and Petitioner is not entitled to habeas relief on this claim.

### 3. Petitioner's Ineffective Assistance of Trial Counsel Claim Related to Trial Counsel's Alleged Conflicts of Interest

#### a. *De Novo* Review Applies to This Claim

Judge Kenny did not address the merits of Petitioner's claim that his trial counsel failed to provide effective assistance because he labored under conflicts of interest.  Neither did the Michigan Court of Appeals nor the Michigan Supreme Court.  Because the state courts did not adjudicate this claim on the merits, this

Court reviews it de novo. *See Jackson v. Houk*, 687 F.3d 723, 731 (6th Cir. 2012).

>    **b.    Petitioner Was Not Deprived of the Effective Assistance of Counsel Due to Trial Counsel's Purported Conflicts of Interest**

Petitioner argues that his trial counsel was ineffective because he labored under conflicts of interest.   Petitioner appears to allege that trial counsel was conflicted in two respects.  First, Petitioner argues that his trial counsel attempted to represent the interests of the victims and failed to give Petitioner his undivided loyalty.  Second, Petitioner suggests that trial counsel allowed his own self-interest in embarrassing the Detroit Police Department at a trial to trump his (counsel's) duty to properly advise Petitioner about (1) the benefits of the plea deal that Petitioner had accepted, and (2) the risks of going to trial.  The Court does not believe that trial counsel had a conflict of interest that in any way prejudiced Petitioner.

In support of his argument that trial counsel had "divided loyalties" between himself and the victims' families, Petitioner relies upon trial counsel's pre-trial statement that "I'm fighting for everybody here today and the family." (ECF #5-13 at 30, Pg. ID 443.)  Petitioner insists this statement provides clear evidence that his trial counsel was considering the interests of the victims' families instead of focusing on Petitioner's interests alone.  But Petitioner takes his trial counsel's statement out of context.  Petitioner's trial counsel made the statement during a

rambling soliloquy to the trial court in which he went to great lengths to explain that he never negotiates with prosecuting attorneys and that he did not do so in this case. (*See id.* at 27-30, Pg. ID 440-43.)   Simply put, he made the statement as part of a broad proclamation concerning how hard he *fights for his clients*, and his hyperbolic and off-handed reference to the victims' families is not evidence that he was actually acting on their behalf.  When the record is read as a whole, there is no reason to believe that Petitioner's trial counsel – who fought vigorously for Petitioner at both trials – actually felt a sense of loyalty toward the families.

Likewise, there is no reason to believe that Petitioner's trial counsel had a personal interest in attacking the Detroit Police Department at the expense of Petitioner's best interests.   Indeed, counsel had "scored" serious "points" *on Petitioner's behalf* at the first trial by attacking the department, and he could have reasonably believed that he could similarly score points at the second trial.   In short, there is no reason to believe that trial counsel's plan to attack the police was motivated by his personal interests rather than by Petitioner's best interests.[5]

---

[5] Petitioner repeatedly asserts that a conviction was a foregone conclusion in light of his confession.   From this premise, Petitioner concludes that his trial counsel must have had a conflict of interest when he advised Petitioner to withdraw his pleas and go to trial. Petitioner insists that unconflicted counsel would have advised him to maintain his pleas.   But even with Petitioner's confession, the case against him was not nearly as "open and shut" as Petitioner now suggests.   As noted above, Petitioner launched successful attacks against the prosecution's case at the first trial.   Moreover, Petitioner had the opportunity at the second trial to argue that the prosecution's theory – that that there were two shooters – should be

4.      **The Ineffective Assistance of Appellate Counsel Claim Related to Trial Counsel's Alleged Conflicts of Interest**

a.      **The Claim is Reviewed *De Novo***

Judge Kenny did not address the merits of Petitioner's claim that he was denied the effective assistance of appellate counsel when his appellate counsel failed to argue that Petitioner's trial counsel labored under conflicts of interest. Neither did the Michigan Court of Appeals nor the Michigan Supreme Court. Because the state courts did not adjudicate this claim on the merits, this Court reviews it *de novo*. *See Jackson*, 687 F.3d at 731.

b.      **Appellate Counsel Was Not Ineffective for Omitting the Conflicts of Interest Claim**

As explained above, Petitioner's claim that his trial counsel was ineffective due to conflicts of interest lacks merit.  Accordingly, appellate counsel was not ineffective for omitting the claim from Petitioner's direct appeal. *See, e.g.*, *Davie* 547 F.3d at 312; *Willis*, 351 F.3d at 745.

5.      **Petitioner's Due Process Claim**

Finally, Petitioner claims that he is entitled to habeas relief because Judge Kenny violated his right to due process. (*See* Petition at 3-4, Pg. ID 3-4.)

---

disbelieved because it conflicted with the theory the prosecution put forward at the first trial.  Finally, it is noteworthy that the prosecution offered the favorable plea deal.  If the first-degree murder charges were as strong as Petitioner now suggests, it is unlikely that the prosecution would have agreed to permit him to plead no contest to lesser offenses with substantially lesser sentences.

According to Petitioner, Judge Kenny made a "clear error" when he "found that he could not rule" on Petitioner's claim that he received erroneous advice related to Prosecution's One-Shooter Theory "because he found it had been raised before in the appeal of right." (*Id.* at 3, Pg. ID 3.)  Because no state court has adjudicated this claim on the merits, the Court reviews the claim *de novo*.

Even if Judge Kenny incorrectly concluded that he was procedurally barred from adjudicating Petitioner's claim related to the Prosecution's One-Shooter Theory, Petitioner has not established that such an error violated his right to due process.  Judge Kenny made this ruling on collateral review, and Petitioner has not cited any authority that a state court violates a petitioner's due process rights by erroneously invoking a procedural bar on collateral review.  Moreover (and in any event), Judge Kenny *did* rule on the merits of Petitioner's ineffective assistance claim related to the Prosecution's One-Shooter Theory.  Judge Kenny concluded that "there is no evidence that . . . *leads this court to believe that Defendant was mislead [sic] or improperly advised*" and that Petitioner's claim with respect to the Prosecution's One-Shooter Theory advice was "without merit." (ECF #5-24 at 6, Pg. ID 1333; emphasis added.)  As Judge Kenny did review the merits of this claim, Judge Kenny did not violate Petitioner's right to due process.

## CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). He must show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." Rules Governing § 2254 Cases, Rule 11(a).

The Court grants Petitioner a certificate of appealability on the *sole* issue of whether the Court should have granted him an evidentiary hearing on the claims in the Petition.  Reasonable jurists could debate whether Petitioner should be given such a hearing, and the issue warrants further consideration by the United States Court of Appeals for the Sixth Circuit.

The Court declines to grant a certificate of appealability with respect to its resolution of the merits of Petitioner's claims.  The Court is persuaded that on this record (i.e., one not expanded by an evidentiary hearing), reasonable jurists could not debate the correctness of the Court's decision to deny relief on Petitioner's claims.

## CONCLUSION

Accordingly, for the reasons stated above, the Court (1) **DENIES** Petitioner's motion for an evidentiary hearing (ECF #7), (2) **DENIES** the Petition (ECF #1), (3) **DISMISSES** this action **WITH PREJUDICE**, and (4) **GRANTS** a Certificate of Appealability **<u>LIMITED</u>** to the issue of whether the Court should have conducted an evidentiary hearing on the claims in the Petition.

**IT SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 2, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 2, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

35